Good afternoon, Your Honor. May it please the Court, Keith Rosen, United States Attorney's Office for the District of Delaware, on behalf of the Appellant, the United States, and I would request two minutes for rebuttal. And I apologize to the Court for the outset for the lack of my voice. I hope it will hold out. I understand that. I'll try to keep my answers brief. You mean you want us to keep our questions brief? Certainly not, Your Honor. This Court and the Supreme Court have consistently held that the police may approach an individual on the street, ask that individual for identification, ask that individual a series of questions, even questions that are accusatory in nature or call for incriminating answers, and indeed questions that ask for consent to search that individual or his baggage, and that none of that activity converts that encounter into a seizure under the Fourth Amendment. It's the government's position that the district court erred in this matter when it held that in just such an encounter, the repetition of a single non-accusatory question was sufficient without any other facts to convert that encounter into a seizure. You think it's not intimidating? I drive to the shore on weekends, and I was stopped last year by two police cars on either side of me. They asked me to pull over and started to ask me some questions. I was obviously, since I don't drink, I had no concern about that. But, and I know the law was sort of my thing, and my heart was pounding. You don't think that it's necessarily intimidating when police stop you and ask you a series of questions? You think I could have, you know, just said, I'm not answering your questions, I'm going to drive off? Your Honor, Judge Gibbons addressed that very statement in United States v. Thame for this Court. And I believe Judge Gibbons wrote to paraphrase that while the members of this Court and, indeed, members of the district court might disagree with that precise point, might agree with Your Honor on that precise point, the Supreme Court has already ruled on that issue. And the Supreme Court has held in Bostick and Drayton and Mendenhall and other cases specifically, that from an objective standpoint, your encounters with the police, certainly not disputing Your Honor's personal experience, and I imagine it's the experience of many people encountering the police, but that that is not sufficient. That inherent oddity of being questioned by the police is not sufficient to convert an encounter into a seizure. Especially if you're an African-American male at 3 a.m. in the morning? You think that's not intimidating? I think that that is the record, Your Honor. And I think that if you look at this Court's prior cases in Thame, in Kim, and Lockett as well, the police were cases where the situation was much more coercive. Kim provides a great example of that, where the police were actually outside a train compartment, standing in the doorway of the train compartment, and the defendant was inside. He had nowhere to go. The only way, as this Court wrote in Kim, that he could have denied the request of the police to talk to him would be literally to shut the door in the police's face. And this Court held that that in and of itself was not sufficient to take us to the point of a seizure. What about our decision in Johnson v. Campbell? I think Johnson is a very different case, Your Honor, on the facts. And the Court will recall that it's a totality-of-the-circumstances analysis. Johnson was not about the mere repetition of a question, which was the critical fact for the district court in this case. In Johnson, the police officers came up to the van where the defendant was seated as the driver. The window was rolled up. The police officers told the defendant at the outset of that encounter that he was being detained. They asked him to roll down his window. He refused. The police officers told him to roll down his window again and did so until he complied. Then the police officers asked him for identification. Mr. Johnson again refused to provide it and asked the officers questions. Why are you bothering me? Why are you asking for my identification? Et cetera. The critical fact in that case is that the police made it clear to any reasonable person in Mr. Johnson's position, regardless of race, that he was not free to go. In this case, quite differently, the police officers asked the defendant if they could talk to him. He said, okay, turn to them. They asked him for identification. He said he had none. The police officers asked him where he was going. He provided an answer. And then they asked him, well, where is your girl's house? He said he was going to his girl's house. And he said, well, I'm going to my girl's house. Now, in that case, I submit to the court, even on the repetition of the question, it's very different from Johnson. If he had walked away at that point from the officers during their questioning, would they have had justification to make a Terry stop? No, Your Honor, and we have not contended that they have. What about the Brown case that was cited by the district court in this matter? Your Honor, the district court cited Brown on a second issue, which the district court took up in a footnote at the end of it. Okay, well, why don't you – maybe you ought to stay on this point. On the first one, Your Honor? Yeah, maybe. Is there anything else you want to tell us about? The only other point I'd make, Your Honor, is that I direct the court's attention to this court's decision in Thame, and particularly because, as Judge Sloverter was asking about the Johnson case, my colleague makes the argument, the district court accepted it, that Johnson stands for a proposition that the repetition of a question or a request can result in a seizure. Thame dealt with the situation. It was an encounter at the Amtrak station, 30th Street station, where after a series of escalating questions, the police asked the defendant for consent to search his bag. The defendant refused, saying, I've got sensitive things in there. The police asked again, saying, well, we can search you in a private room. He refused again, and only then did the police ask if he would consent to a dog sniff. I suggest to the court that Thame, which upheld that encounter as not a seizure in violation of the Fourth Amendment, stands for the proposition that the mere repetition, as my opponent suggests, from Johnson, cannot be sufficient under Mendenhall to take us to a seizure. You don't see any significant difference between this case and Valentine? Well, Valentine is certainly a better case for the government on the question of whether the two steps forward that the defendant here took constituted submission to the show of authority. Valentine was a case where the police said, essentially, stop and show your hands, and the defendant, Mr. Valentine, ran, and he ran directly in the direction of the police officers in an attempt at evasion. The reason Valentine, I suggest, is controlling here is because of the alternative holding that the court made. Mr. Valentine argued that the facts were different, that, in fact, when the police said stop and show your hands, he did stop, stated his name, paused momentarily, and then fled, and argued that that was sufficient to constitute submission to the show of authority. In this case, I'm sorry, and the court held in Valentine that even if those facts were true, that the defendant pausing and stating his name would constitute momentary compliance, which is insufficient under Hodari D. I suggest to the court that this case is closer to Valentine than it is to Brown on that axis, and I particularly draw the court's attention to a case that was cited approvingly in Valentine, United States versus Washington, which was a D.C. Circuit opinion that this court relied on in Valentine for the proposition that attempted compliance and momentary compliance are insufficient. In Washington, it was a car stop case, and the defendant was driving a car. The police turned on the lights and sirens directing him to pull over, and the defendant did, in fact, pull his car over, and as soon as the police officers pulled their car over and stepped out of the car to walk up to conduct their traffic stop, the defendant drove off, and the district, or I'm sorry, the Court of Appeals in Washington stated that the act of stopping his car, which normally would constitute a stop under those circumstances, was this type of momentary compliance that was not compliance in a real sense. I suggest to the court that those cases are closer to the facts here than Brown, which was, I suggest, distinguishable. Officer Reinhart testified that Smith remained stopped throughout the questioning. Is that sufficient to show submission? No, Your Honor, because there wasn't a seizure at that point. What the individual did is he stopped when the police said, may we talk to you. He stayed there while he answered the first three questions. Do you have any identification? Where are you going, and where is your girl's house? The government's position is there was no seizure at that point. Therefore, it was a consensual encounter, and the fact that he stood there does not constitute submission to a seizure. The seizure only happened or was attempted when the police officer said, put your hands on the car. We concede that that's an attempted seizure under Hodari. Had the defendant actually put his hands on the car, he would have been seized, and as I stated to Your Honor earlier, there would not have been reasonable suspicion at that point. That would have been an improper seizure. However, because the two steps forward cannot be considered submission in a real sense, which is the language that this Court used in Valentine, he never submitted to an effective show of authority converting this encounter into a seizure under the Fourth Amendment. Anything else you want to tell us? No, if the Court has no further questions. Good. We'll have you back on rebuttal. Thank you, Your Honor. Hold on. Hold on. I was too quick. I'm pondering. What can police, all right, that's really to the defense lawyers. You can sit down. Thank you, Your Honor. Good. Thanks, Mr. Rosen. Thank you. Sorry. Thank you. I hope we all. Good afternoon, Your Honors. Mr. Chief Judge, my name is Kira Bradford, and I am an Assistant Federal Public Defender for the District of Delaware. Good afternoon. Mr. Thomas Smith. I'm sorry. And seated at the table is my co-counsel on brief, Ms. Taifa Harper. Very good. Thank you. Your Honor, we are respectfully asking you to affirm the District Court's decision in this case because the District Court properly suppressed the firearm after finding that an unlawful seizure occurred when the police officers repeated questionings to Mr. Smith over and over again, refused to accept his responses, and then ordered him to place his hands on the hood of the police vehicle. Well, let's go into that for a second. That was the question. What can the police officers do when an individual responds to a question in a manner that doesn't make sense, as arguably happened in this case? Must they accept that answer unless they have justification to make a terrorist act? We would argue yes, Your Honor. An officer's need for clarification should not trump an individual's constitutional rights, and the District Court in this case did not find that Mr. Smith's answers were nonsensical. He found that Mr. Smith was clear in stating where he was going to his girlfriend's house, and the officer's need for clarification did not trump his ability to terminate the encounter, thus making this otherwise consensual encounter turn into effectually a seizure. There was testimony at the hearing that he picked up his hand and pointed south. Correct, Your Honor. What is the effect of that? In essence, in looking at the totality of the circumstances, when Mr. Smith was asked the question where his girl's house was, Mr. Smith indicated by pointing his finger south in the general area of where his girlfriend's house was. The officers in this case needed more than that, and they were going to effectuate the seizure to get more than that when they ordered him to the vehicle to physically search his person to find out what his identification was and where his destination was. And at that point, Your Honor, the officers effectuated a seizure without the probable, justifiable, reasonable suspicion. What constituted the seizure? What exactly? It's our argument that the seizure began at the moment the officers refused to accept Mr. Smith's answers. Well, they didn't refuse. They just kept asking. Correct, Your Honor. In repeatedly asking the questions. How many times was it repeatedly? The district court found that it was several times, and I believe the record in the transcript is devoid of the actual number. The officer testified that we've asked him several times over and over again once we were not satisfied with the answers that Mr. Smith was providing. In that essence, the repeated asking of the questions did not, where the officer did not accept Mr. Smith's right to terminate the encounter by just repeating, I'm going to my girl's house and giving nothing more, this turned into a seizure as the court articulated in Johnson v. Campbell. Don't you need to have at least some momentary submission? And in this case, Your Honor, we would argue that there was momentary submission. Which moment? At the moment that Mr. Smith stopped and answered the questions repeatedly over and over again. Which time of the questions? Let's start from the point. Where do you say the show of authority was? The show of authority began, Your Honor, and it's easier to grasp show of authority once the officers order Mr. Smith to do something. However, we would argue it started at the time that they did not accept his responses. Which was after at least the first question, right? Which was after at least the third question. Third question, okay. Yes, Your Honor. And what did they do at that time to exhibit a show of authority? At that time, they would not accept Mr. Smith's responses. Okay, but what did they do? They kept asking him their question over and over again in order to get him to answer the question the way they would like to, in order to get the answer they wanted. After they did not get that answer from Mr. Smith, they were effectually going to seize Mr. Smith to do it, to find it out themselves. Wait a minute, were going to? What did they do? They ordered Mr. Smith to come over to the vehicle to check him. And then what did Mr. Smith do? He took two steps in compliance to that order, Your Honor. And that falls squarely within the holdings that this court has. So you're getting to the answer I was looking for. Are you saying, then, that those two steps constituted the momentary submission? Absolutely, Your Honor. And that would fall squarely within the holdings of this court, especially in United States v. Coggins and United States v. Brown. What about Valentine? Valentine, we would say, is definitely distinguishable from this case. The Valentine, first the court found that there wasn't even enough for momentary compliance in this case. It's not a momentary compliance case. It showed that Mr. Valentine's actions did not submit in any way to the officer's authority to come toward him. Mr. Valentine's actions were simply who me in order to ascertain if the officer was speaking to him. And then there was a simultaneous charging in which the court stated that that would be able to be factored into regional suspicion analysis. In this case, we definitely have a momentary compliance, as this court has set forth in United States v. Coggins, as well as United States v. Brown. In United States v. Brown, the court says that even Mr. Brown's actions of turning to place his hands on the vehicle, even if he hadn't done so, was enough for momentary compliance. But we didn't have, was he asked to place, Mr. Smith asked to have his hands placed on the vehicle? Yes, Your Honor. And were officers in the car or outside the car? At the time the order, Mr. Smith was instructed the officers were inside of the vehicle. Is that significant or not significant? Well, I believe it's significant for this proposition. The officers were inside the vehicle at the time that Mr. Smith began to submit. Then they opened their door because they, too, believed that Mr. Smith was submitting to their authority. Is it clear that they opened the door before he started to run? Yes, Your Honor. In the transcripts and in the appendix, the officer stated, and the question was posed by myself, I think, did you ever get out of the vehicle? The officer stated once he took one step, either myself or both of us unlatched our doors to step out of the vehicle. Hold on. That's different from stepping out. I thought the testimony was that they unlocked the doors. They unlocked the doors to get out of the vehicle. But had they gotten out by the time he started to run? I apologize, Your Honor, if I didn't answer your question. They had not had an opportunity to get out of the vehicle. Had they gotten out before he started to run? They had not. Is that significant? I don't believe that is significant, Your Honor, because once the moment of seizure, once there's a submission to the show of authority, a seizure has occurred, the fact that the officers were not totally out of the vehicle at that point should not be factored into the reasonable suspicion analysis. You mean the fact that the officers were not out of the vehicle? Were not out of the vehicle. Now, let me see if I can summarize what you've said because now I'm not clear. I thought you said the seizure occurred. I thought at first you said the seizure occurred after the third question, where are you going? And now you've said the seizure occurred when he took two steps toward the police car.  I apologize if I was ambiguous, Your Honor. I'm not ambiguous. Contradictory. I apologize if, Your Honor, it took me to be contradictory. The seizure occurred at the time Mr. Smith stood still and repeatedly answered the questions over and over again posed to the officer. At that point, it was clear that Mr. Smith could not terminate the encounter and that the officer's question – How do you know he couldn't terminate? If he didn't at that point get up and leave, we don't really know. I mean, isn't the issue whether there was momentary submission? I think the issue is defining the moment of seizure. Yeah, that's what we're trying to do. That's what we're trying to get to. And the court properly determined the moment of seizure as the time that Mr. Smith did not feel free to terminate the encounter. And we would suggest, Your Honor, that that was a time that Mr. Smith continued to give his answer, I'm going to my girlfriend's house, even pointing in the general vicinity. And the officers repeatedly asked that question because they were not satisfied with that answer. You know, it's very difficult for a court to say the moment of seizure occurred when he felt that he wasn't free to leave. There has to be something – doesn't there have to be something objective? His feeling doesn't make it a seizure. Now, when he – arguably when he took two steps, but that's not what the district court found, is it? Correct, Your Honor, and I should have put it more so in the objective standard. A reasonable person in Mr. Smith's situation would not feel free to terminate the encounter, and they would feel like the officer's request was compelled. Once they had given the answer that they believed was sufficient by saying, I'm going to my girlfriend's house and pointing in the general vicinity, the officers not accepting that answer as a response that they would like kept asking the same question. And evidenced by their further intent to get that answer from him, they called him over to the police vehicle solely to search for his identification and to find out where his destination was, as the district court found. Don't they have the right to ask you for your identification? They do have that right. However, Your Honor, citizens do also have – It's 3 a.m. in the morning, you know. That's correct. They do have a right to ask for identification. Mr. Smith clearly said that he did not have identification, and a citizen's right to terminate the encounter does not trump the officer's need for clarification in this case. Remember, Mr. Smith was not suspected of any criminal activity. Police were given a directive by the lieutenant to stop anyone in that area, ask for identification, find out where they lived, see where they were going, and what they were doing outside. Was that in itself illegal? I mean, was there something wrong with the direction? When it's applied as it was in this fax, Your Honor, there is something wrong with that. Well, but they were doing exactly what they were asked to do, which is get identification, find out where they're going. If they make it a compelling situation where their compliance is compelled, it does trump and step on – Yeah, but I think what we're searching for is why was compliance compelled? I mean, you keep making these conclusions, but we're trying – and I'm not asking you easy questions, and I know it's not easy for you. If we knew the answers, we wouldn't be asking. That's correct. Hopefully I'm providing you with some sort of direction. I hope that's my purpose, but in any event – But you agree that we can't make a determination of the dispositive of the issue as to what he felt. That's correct, Your Honor. We have to look at what's objective. Correct, Your Honor. I would just ask this court, in looking at the totality of the circumstances, even if Mr. Smith continued to give them the answers that he gave them, which is, I'm going to my girl's house. And they said, where is it, or something. Didn't they try to find out? Yes, they said, where is your girl's house? He pointed southbound and said – Well, is it clear? I mean, only after I pointed out that somebody had testified, did you go into the pointing. I don't know whether – That was coming in my argument a little later. Since Your Honor addressed it, I did pick up on it at that moment. However, it's not clear at the exact point that he pointed, but it was a response to the officer's question, where is your girl's house? He lifts his hands up and points in a southbound direction. Had he answered that question each time, the officers would have still asked him to put his hands on the patrol vehicle to search – You don't know that. I'm sorry? We don't know what would have happened. Well, in looking at why they asked him to put his hands on the vehicle, it was to search for his identification and find out where he was going. That means that they didn't get the answers that they wanted from Mr. Smith, so now they were going to physically search him. Well, they didn't get responsive answers. And this Court has held that that's within a citizen's right to do. They don't have to give the officers the answers that they want. They can terminate the encounter. And it would have been easier in this case if Mr. Smith just said, you know what, I don't feel like telling you that. But how many times does a citizen approaching an officer at 3.45 a.m. feel that they have to do that? Ms. Bradford, do you agree, though, that there has to be at least some momentary or some very small, at least, submission to that authority for there to be a seizure? Yes, as we have in this case, Your Honor. You argue that the two steps towards the car is the submission. Yes, Your Honor, I do. I argue that in line of the Court's previous holdings, especially in Coggins where we have a person sitting down, standing up and running, that was enough for momentary compliance. Our task will have to be to determine whether under the totality of these facts that that two step, in fact, was a submission, if we agree with the first part of your argument. That is correct, Your Honor. Okay. In all. Good. Any other questions? Ms. Bradford, thank you very much. Thank you. Good. Mr. Rosen. Would the Court's permission clarify one or two answers that my friend gave to the Court's questions? Judge Slover, you asked a question about whether, that this Court can't look at what this particular defendant thought, whether he felt free to leave, et cetera. Wouldn't it be, what she answered, whether a reasonable person under the second case? That is the test. That is the test. In Mendenhall and then the Supreme Court reaffirmed in Drayton and this Court in Crandall has consistently affirmed that it's a reasonable person analysis. Now, why wasn't the two steps, why weren't the two steps a momentary submission? Well, I believe they were at best momentary, but this Court held in Valentine that momentary is not enough. And that's where I take issue with the appellee's point here. Ms. Bradford said on a number of occasions in response to Judge Fisher's questions, were those two steps momentary compliance? They may have been, but momentary compliance is not good enough. Under Valentine. Coggins, which my opponent cites, is a very, very different case. In Coggins, the defendant was stopped. He was seated down after answering some questions from the police and stood up and said to the police officers, can I go? I have to go to the bathroom. And the police officer said, no, sit down. That's when the defendant sat back down and then later fled. This Court found that the act of the defendant attempting to leave, affirmatively saying I'd like to leave and being told no by the police, was dispositive on the question of whether or not he had submitted and was therefore seized under the Fourth Amendment. This is a very different case. What about Brown? In Brown, Your Honor, there was a robbery, an attempted robbery on the streets of Philadelphia. And the police had gotten word of who the subject was, what the subject looked like, and the police saw the defendant. Now the encounter starts very differently than it starts in this case in Brown in that the defendant and his cohort are about to get into a taxi cab. The police officer comes up and sends the cab away. He says, wait a minute. He then tells the defendants, the officer does, that there's been this robbery, that they're investigating the robbery, and that the individual who was the victim is going to come to their location to make an I.D. And if the individual doesn't I.D. this defendant as the perpetrator, then he will be free to go. So the defendant is standing there in response to those statements by the police, and it's at that point that the police say, now put your hands on the car. I want to pat you down. On those facts alone, on the totality, it's a very, very different circumstance than what happened here. Moreover, the principal finding in Brown was that the defendant did, in fact, put his hands on the car. What Judge Ambrose writing for this court said is that there was some dispute on the facts as to whether the individual actually touched the car or whether he reached his hands out, didn't actually touch the car, but started to running after extending his hands. I suggest to the court that on the totality of those facts, after the police had already said, you're staying here until you're I.D.'d or not by this victim, that this court correctly found that by extending the arms out, whether the hands touched the car or they didn't touch the car, that defendant was submitting to the police officer's authority. Here, it was a purely inconsensual engagement before the request to put the hands on the car. And contrary to... Would it be fair to say in Brown that even, that there was a seizure even without the near touching? I believe that's correct, Your Honor. I think at the point, this court didn't rule on that basis, but I think certainly this court could have ruled consistently with its prior opinions that when the police officer said to the defendant, you're staying here until the victim comes, and the defendant did not walk away at that point, that he had submitted to that show of authority and was seized. I see my red light is on. I thank the court. Do you want to finish up? Do you want to say anything else? I think that is the essential difference with Brown, Your Honor, and I think this court can distinguish on that basis. Mr. Rosen, thank you. Thank you, Your Honor. We thank both counsel for an excellent argument. Thank you. We will take this case under advisory.